IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

DONALD V. SNOWDEN,
Defendant.

Case No. 19–CR–40081–JPG–1

**MEMORANDUM AND ORDER**

Before the Court are Defendant Donald V. Snowden's 9 *pro se* motions: (1) Motion for Bond (Doc. 173); (2) Motion for Intent to Use Evidence (Doc. 175); (3) Motion to Suppress Text Messages (Doc. 176); (4) Motion to Suppress Search (Doc. 177); (5) Motion for Facial Challenge (Doc. 178); (6) Motion to Compel Discovery (Doc. 179); (7) Motion for Expert Witness (Doc. 180); (8) Motion to Compel Disclosure of *Brady* Materials (Doc. 193), (9) Motion for Reconsideration regarding (Doc. 165) Order Striking Motion to Dismiss (Doc. 211).

Snowden's Motion to Suppress Statements (Doc. 181) and Motion Objecting to Statement of Miranda Rights (Doc. 210) will be heard in a hearing before this Court on November 22, 2021.

## I. PROCEDURAL AND FACTUAL HISTORY

According to the Government, a confidential source ("CS") working for law enforcement sent a text message to Snowden to purchase methamphetamine on July 30, 2019 (Doc. 185, p. 1). The CS said that he wanted "a few" (meaning multiple ounces of methamphetamine); and Snowden said that he was "good" any time. *Id.*

On August 1, the CS texted Snowden again and arranged to meet at a Wendy's Restaurant later that day to purchase two ounces of methamphetamine. *Id.* "The CS was

equipped with audio/video recording equipment pursuant to federal overhear authority . . . ." *Id.* at 2-3.  When the CS arrived at the Wendy's, Snowden texted him saying to meet at a nearby residence instead.  *Id.* at 3.  He did, and Snowden greeted the CS at the vehicle passenger door, and the CS gave him the cash.  *Id.* at 3, 5.  Snowden then met with another individual, Kevin McBride, who was parked in another car.  *Id.* at 3-4.  Finally, Snowden walked away, and McBride delivered to the CS a Wendy's french-fry container with the methamphetamine.  *Id.* at 4-5.

The next day, law enforcement conducted a warrant search of a residence (Doc. 177). Snowden says that he "did not reside at the address, nor did [he] have any meth in [his] possession to validate a meth conspiracy nor did [McBride] in any amount . . . ." *Id.* at 2.  He also says that "[t]here was no drug sells of any kind that supported a warrant for conspiracy of meth distribution that took place out of" that residence.  *Id.* at 1.

After his arrest, Snowden was interviewed by a DEA agent on August 2, 2019.  (Doc. 181, p. 1).  He says that the agent "threatened and promised [him] to utter the words 'ice' or he was not free to leave.  Snowden uttered the word to due to that reason, and also because he feared for his life." *Id.*

The next month, a federal Grand Jury brought a one-count indictment against Snowden for distribution of methamphetamine (Doc. 1). Snowden signed a written Waiver of Detention Hearing (Doc. 18), and Magistrate Judge Reona J. Daly entered an Order of Detention (Doc. 19). In the Waiver, Snowden acknowledged that the issue of detention would only be reopened "if the Court finds information exists that was not known to the movant at the time of this waiver and that has material bearing on the issue of detention."  (Doc. 18, p. 1).  Because Snowden was charged with a serious drug offense, Magistrate Judge Daly noted that there was a "rebuttable

presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community . . . ." *Id.* at 2. A superseding indictment later added a conspiracy charge and named McBride as a co-defendant. Second Superseding Indictment 1 (Doc. 83).

Defendant has filed eleven (11) *pro se* motions in this matter. On September 22, 2021 the Court scheduled a hearing on Defendant's Motion to Suppress his statement to law enforcement (Doc. 181). It has been rescheduled for November 22, 2021. On October 4, 2021, Snowden filed a Motion objecting to his Statement of Miranda Rights (Doc. 210). Theses motion will be addressed in his hearing on November 22, 2021. We address the remaining nine *pro se* motions.

## II.    LAW AND ANALYSIS

### A.  Motion for Bond (Doc. 173)

Snowden asks the Court to reconsider the Order of Detention on September 19, 2019 because Magistrate Judge Daly did not hear evidence from either party and did not issue written findings as required by 18 U.S.C. § 3142(i).  (Doc. 173, p. 1).  He also claims that he never signed the written Waiver of Detention Hearing. *Id.* at 2.  Finally, he says that there are conditions of release that would reasonably assure his appearance and public safety: "[H]e can be released to the care of his mother who will report any violations of conditions of his release. Also, GPS monitoring to ensure a curfew and his whereabouts, and pretrial facility halfway house to supervise him and he can submit to probation daily with drug/alcohol testing." *Id.* at 4. The Government has responded to the motion (Doc. 195).

After a defendant's arrest, a magistrate judge conducts a hearing to determine whether the defendant should be detained or released pending trial. *See* 18 U.S.C. § 3142(a).  During the hearing, the defendant "shall be afforded an opportunity to testify, to present witnesses, to cross-

examine witnesses who appear at the hearing, and to present information by proffer or otherwise." 18 U.S.C. § 3142(f)(2). If the magistrate judge issues a detention order, then she must "include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(h). A defendant ordered detained by a magistrate judge may seek *de novo* review in the district court. 18 U.S.C. § 3145(b). Ultimately, in assessing whether a defendant should be detained pending disposition, the judge must consider "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g).

Snowden voluntarily submitted to pretrial detention when he signed a Waiver of Detention Hearing (Doc. 18). Magistrate Judge Daly therefore did not err by ordering his detention without conducting a hearing or entering factual findings. Yet despite the Waiver, Magistrate Judge Daly later considered Snowden's Motion to Reconsider Bond and properly denied it on its merits (Doc. 63). And Snowden's signature on the Waiver of Detention Hearing matches the one on his Motion for Bond—his argument about the "alleged" waiver are unavailing. At any rate, the Court agrees there are no conditions of release that will either reasonably assure the appearance of the defendant as required and the safety of the community. Snowden is charged with a controlled-substance offense, and if found guilty, this would be his fifth conviction for a controlled-substance offense. His criminal history and the seriousness of the allegations against him suggest that, as a repeat offender, Snowden poses a public-safety risk.

The Court therefore **DENIES** Snowden's Motion for Bond (Doc. 173).

**B. Motion for Intent to Use Evidence (Doc. 175)**

Snowden asks the Court to order the Government to provide notice of any evidence it intends to use in its case-in-chief at trial "and any evidence the [he] may be entitled to discover

under Rule 16 [of the Federal Rules of Criminal Procedure]," including the grand jury transcripts. (Doc. 175). The Government has responded to the motion assuring the Court that it has provided, and will continue to provide all discoverable material, including *Brady* material and Jencks Act material, at the appropriate time, to Snowden in this case (Doc. 188). It further argues Snowden has not made the showing necessary for blanket disclosure of all grand jury testimony. *Id*.

"A defendant . . . is not entitled to a disclosure of grand jury proceedings without some demonstration of 'particularized need.'" *United States v. Edelson*, 581 F.2d 1290, 1291 (7th Cir. 1978). While "[i]t does not follow . . . that grand jury minutes should *never* be made available to defense," the defendant must still "show that a 'particularized need' exists for the minutes which outweighs the policy of secrecy." *Pitt. Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) (emphasis added). This "long-established policy of secrecy" is "older than our Nation itself." *Id.* at 399. "To make public any part of its proceedings would inevitably detract from its efficacy. Grand jurors would not act with that independence requires of an accusatory and inquisitorial body." *Id.* at 400. So to meet his burden, a party "seeking grand jury transcripts . . . must show that the material [he] seeks is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [his] request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops NW*, 441 U.S. 211, 222 (1979).

Snowden claims to "have more than one particularized need" for the grand jury transcripts (Doc. 175). First, he says that he needs the transcript to "prepar[e] a possible civil suit" for "wrongful arrest/false arrest." *Id*. But this Court already dismissed that case and entered judgment. (*See* Judgment at 1, *Snowden v. Henning*, No. 19-CV-01322-JPG, ECF No. 39 (S.D. Ill. Mar. 4,

2021)). More importantly, Snowden does not say why the grand jury transcripts are "absolutely necessary, rather than simply beneficial to [his] § 1983 action and that the information contained therein could not have been obtained through normal discovery channels." *See Lucas v. Turner*, 725 F.2d 1095, 1102 (7th Cir. 1984).

Snowden also wants the transcripts because he thinks that the superseding indictment was not based on probable cause (Doc. 175, p. 2). As such, Snowden believes the transcripts will demonstrate prosecutorial misconduct. But "[t]he grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime." *Kaley v. United States*, 571 U.S. 320, 329 (2014) ("We have found no authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof.") (cleaned up). Additionally, Snowden has not pointed to anything specific that may suggest the prosecutor engaged in improper conduct before the grand jury. *United States v. Canino*, 949 F.2d 928, 943 (7th Cir.1991) (citing *United States v. Edelson*, 581 F.2d 1290, 1291–92 (7th Cir. 1978).

Finally, Snowden contends that he is entitled to the grand jury materials under the Jencks Act, 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83 (1963); and *Giglio v. United States*, 405 U.S. 150 (1972). Not so. The Jencks Act only requires the Government to produce statements "made by a witness to a grand jury" **after** the witness "has testified on direct examination" at trial. § 3500(b). But no witness has yet testified in this case. *Brady* requires the Government to disclose to the defense any evidence that "is material either to guilt or punishment"—that is, any evidence "which, if made available would tend to exculpate him or reduce the penalty . . . ." 363 U.S. at 88–89. There is no indication, however, that the grand jury materials contain exculpatory evidence. And *Giglio* simply extends *Brady*'s disclosure requirements to include information about deals

that a witness may have entered with the Government. 405 U.S. at 154. Yet Snowden makes no assertion that the grand jury materials contain any discoverable evidence under *Giglio*.

The Court therefore **DENIES** Snowden's Motion for Intent to Use Evidence (Doc. 175).

**C. Motion to Suppress Text Messages (Doc. 176)**

Pointing to the supposed text exchange between himself and the CS, Snowden says that there is "not a proper foundation to authenticate" them; that there is "no testimony from sender on who authored the text"; that the text messages are hearsay; that the risk of unfair prejudice posed by admitting the testimony outweighs their probative value; and that the text messages, standing alone, "are too vague to support a mens rea element of a crime." (Doc. 176, p. 1–2).

The Court disagrees. For one, "[t]o satisfy the requirement of authenticating or identifying an item of evidence," the Government need only "produce evidence to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). There are many ways that the Government can accomplish this, including through testimony of a witness with knowledge; distinctive characteristics of the messages; and evidence that the messages were sent to or from a particular phone number. Fed. R. Evid. 901(b). And the time for the Government to do so is at trial, not now. To that end, if they were sent by Snowden himself, then they are not hearsay. *See* Fed. R. Evid. 801(d). The messages that Snowden supposedly *received* may still be admissible "not for the truth of the matter asserted but instead to provide context for [his] own messages." *See United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (citing Fed. R. Evid. 801(c)(2)). Snowden also says that the text messages are "prejudicial" but does not say how, let alone why, that prejudice is **unfair**. *See* Fed. R. Evid. 403. Finally, the text messages do not need to be dispositive of Snowden's guilt or innocence to be admissible; they need only have *some* "tendency to make a fact more or less probable than it would be without the evidence." *See* Fed. R. Evid.

401(a).

The Court therefore **DENIES** Snowden's Motion to Suppress Text Messages (Doc. 176).

**D. Motion to Suppress Search (Doc. 177)**

Snowden requests that all evidence derived from the search 412 E. Hester St. Apt A be suppressed because the search was conducted in violation of the Fourth Amendment.

Snowden first states that the warrant issued in his case was not supported by probable cause. "Probable cause exists when the supporting affidavit presents a total set of circumstances which create a 'fair probability' that a search will uncover evidence of a crime." *United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The magistrate's task is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Probable cause does not require a showing of criminal activity, as it rides on "the degree of suspicion that attaches to particular types of noncriminal acts." *Id*. at 243, n.13. It also depends on the totality of the circumstances—"the whole picture"—not each fact in isolation. *United States v. Rees,* 957 F.3d 761, 766 (7th Cir. 2020) (internal citations omitted).

With these principles in mind, the affidavit to the search warrant provides sufficient reason to support a finding of probable cause that evidence of illegal drug activity could be found at 412 E. Hester St., Apt A. Detective Pingolt states in his affidavit, on August 1, 2019, Snowden texted the CS to meet him at the Wendy's (Doc. 196, Exhibit 1). Later, Snowden texted the CS to meet him at 412 E. Hester. *Id*. Agents observed Snowden exit Apt A at 412 E. Hester St., meet with the CS, and walk back into 412 E. Hester St., Apt A. *Id*. Ten minutes later Snowden exited Apt A. *Id.* McBride was dropped off by a vehicle and Snowden and McBride met with the CS for

a short time. *Id.* Snowden and McBride reentered 412 E. Hester St., Apt A. Agents met back up with the CS and recovered one bag of suspected methamphetamine. The CS stated Snowden kept $800 provided and McBride handed the CS a Wendy's French fry container with the alleged drugs. *Id*.

On August 2, 2019, agents conducted surveillance of 412 E. Hester St., Apt A. Agents observed at least six individuals entering and exiting the apartment. *Id*. Officers observed McBride exit the apartment. Officers, in a fully marked Carbondale Police Department car, met with McBride who ran once officers asked for identification. *Id*. McBride was apprehended and found with alleged methamphetamine. *Id*. Officers went back to 412 E. Hester St., Apt A and made contact with Snowden, who had an active warrant from Franklin County. Officers noted a smell of cannabis coming from the apartment. Snowden was immediately placed under arrest. *Id.*

Based on a "totality" of circumstances, the affidavit supports a finding of probable cause. Specifically, information and alleged drug evidence obtained from the CS from Snowden and McBride who entered and exited the apartment on August 1, 2019 supports probable cause. While Snowden argues that he "did not have meth in his possession to validate a meth conspiracy," probable cause does not require a "showing" of criminal activity. *Gates*, 462 U.S. at 238. Based on the information from the affidavit, and looking at the totality of circumstances, the magistrate made a practical and common-sense decision that there was a fair probability drugs would be found in the apartment.

Snowden also states there was no good faith exception because he did not reside at the 412 E. Hester St., Apt A and was not found with any methamphetamine in his possession. Good-faith exception might not apply in cases where: (1) "the issuing magistrate wholly abandoned his judicial role"; (2) the warrant was "so lacking in indicia of probable cause as to render official

belief in its existence entirely unreasonable"; or (3) "a warrant [was] so facially deficient" that the "executing officers [could not] reasonably presume it to be valid." *United States v. Kienast*, 907 F.3d 522, 528 (7th Cir. 2018) (citing *United States v. Leon*, 468 U.S. 897 (1984). None of the reasons enumerated by Snowden rise to the level that demonstrate the magistrate "abandoned" his judicial role. The Court also does not find the warrant was "so lacking in indicia of probable cause," rendering belief in its existence unreasonable. Lastly, the Court, upon review of the warrant, does not find it was facially deficient. As outlined above, the affidavit outlined many reasons to support a finding of probable cause that illegal drug activity could be found in 412 E. Hester, Apt A.

Suppression of evidence is a "last resort." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). It is a judge-made rule meant to deter future Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236-37 (2011). The Court does not believe this remedy is warranted in the instant case.

The Court therefore **DENIES** Snowden's Motion to Suppress Search (Doc. 177).

**E. Motion for Facial Challenge (Doc. 178)**

Snowden contends that the video and audio equipment worn by the CS on August 1, 2019 was not legally authorized (Doc. 178, p. 1). He therefore claims that there was an unreasonable search and seizure in violation of the Fourth Amendment. *Id.* He says that the supposed federal overhear authority was invalid because it was merely based on "vague text messages that didn't support a crime nor any national security threat or foreign affairs threat." *Id.* at 2.

The Court disagrees. It is a "well-settled principle that there is no interest protectable by the Fourth Amendment in those situations in which one party to a conversation reposes a trust or confidence in the other party who is actually an undisclosed government agent or informant."

*United States v. Craig*, 573 F.2d 455, 474 (7th Cir. 1979). In other words, a "recording taken by an informant would not transform his actions into a search." *United States v. Thompson*, 811 F.3d 944, 949 (7th Cir. 2016).

> Simply put, no legitimate Fourth Amendment interest is involved in such situations, for that Amendment affords no protection to a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. Nor is the Fourth Amendment violated because the undisclosed agent simultaneously record the conversation with an electronic recording device on his person, or because the conversation is electronically transmitted by the undisclosed agent to a remote place where it is overheard by other agents and/or recorded.

*Craig*, 573 F.2d at 474 (cleaned up). More clearly stated, "[h]owever strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities." *United States v. White*, 401 U.S. 745, 749 (1971).

It follows that so long as "one party to the conversation consents to the electronic recording," the recordings are generally admissible. *Id.; see also United States v. White*, 401 U.S. 745, 759 (1971) ("No warrant to 'search and seize' is required . . . when [a government] agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence."). In short, Snowden's claim that the media captured by the CS infringed on his Fourth Amendment rights is contrary to well established legal principles and therefore, without merit.

The Court therefore **DENIES** Snowden's Motion for Facial Challenge (Doc. 178).

**F. Motion to Compel Discovery (Doc. 179)**

Snowden attacks the authenticity, reliability, and/or chain of custody regarding two ounces of methamphetamine (or 86 grams) (Doc. 179, p. 1). The Court's determination of

whether this evidence is admissible will be done before trial if the Government has laid a proper foundation.

First, the general standard for admissibility of evidence is that it be in "substantially the same condition as when the crime was committed; a perfect chain of custody is not a prerequisite to admission." *United States v. Smith*, 308 F.3d 726 (7th Cir. 2002). Additionally, district courts make "a 'presumption of regularity,' presuming that the government officials who had custody of the exhibits discharged their duties properly." *United States v. Prieto*, 549 F.3d 513, 524 (7th Cir. 2008) (internal citations omitted). Thus, "the government does not have to exclude all possibilities of tampering with the evidence. Instead, the government need only show that it took reasonable precautions to preserve the original condition of the evidence." *Id.* (internal citations omitted).

Secondly, the argument Snowden makes regarding gaps in chain of custody goes to the weight of the evidence, rather than its admissibility. *Id*. at 524. As such, the jury determines what weight the evidence should be given. *Id.* (Seventh Circuit holding the "district court did not err when it admitted methamphetamine exhibits into evidence and allowed the jury to determine what weight that evidence deserved").

The Court therefore **DENIES** Snowden's Motion to Compel Discovery (Doc. 179).

**G. Motion for Expert Witness (Doc. 180)**

Snowden next asks for the video and audio records to be authenticated. Federal Rule of Evidence 901 requires the Government do so. It is the Government's burden to show that the item is genuine – either through the testimony of a witness or evidence regarding the process. The Rules of Federal Evidence address Snowden's concerns regarding authentication and the Government's burden of ensuring evidence "is what the proponent claims it is." Fed. R. Evid. 901 (a).

Next, Snowden states "C.I. must testify to firsthand knowledge as to accuracy of the video recording[.]" (Doc. 180, p. 1). Snowden will have an opportunity to cross examine Government witnesses during his trial.

Lastly, Snowden asks the Court to appoint an expert "to testify about the items seized, including contained, napkins to check for DNA, and for fingerprints, . . . the mental capacity of the [CS] who said he tried to kill himself and shot his hand off." *Id*. at 2. The Court denies this request. Under the Criminal Justice Act, an indigent defendant may request that the court provide him access to expert services that are "necessary for adequate representation." 18 U.S.C. § 3006A(e)(1). Expert services are necessary if "a reasonable attorney would engage such services for a client having the independent financial means to pay for them." *United States v. Winbush*, 580 F.3d 503, 509 (7th Cir. 2009) (quoting *United States v. Cravens*, 275 F.3d 637, 639 (7th Cir. 2001). Mr. Snowden provides no clear basis as to why and how such an expert could aid in his defense. The Court finds that an expert to testify about the evidence (both DNA and fingerprints) as well as the mental capacity of the CS are neither necessary nor would a reasonable attorney engage in such services on behalf of Snowden.

The Court therefore **DENIES** Snowden's Motion for an Expert Witness (Doc. 180).

### H.  Motion to Compel Disclosure of *Brady* Materials (Doc. 193)

Snowden requests the Court compel discovery obligations under *Brady*, *Giglio*, and the Jencks Act.

Under *Brady*, *Giglio*, and their progeny of cases, the prosecution has a duty to ensure criminal trials are fair by disclosing evidence that is favorable to the defense or impeaches a government witness. *Brady* and *Giglio* material must be disclosed "in time for the defendant to make use of it" and not "so late as to prevent the defendant from receiving a fair trial." *United*

*States v. Grintjes*, 237 F.3d 876, 880 (7th Cir. 2001) (internal quotations omitted). This material does not necessarily need to be disclosed before trial. The Government has acknowledged its continuing obligations under *Brady*, *Giglio* and their progeny. It has been repeatedly held that where the government has made assurances it will comply with *Giglio* and *Brady*, those assurances are sufficient. *See Strickler v. Greene*, 527 U.S. 263, 283 n. 23 (1999).

In support of his motion Snowden states he is "showing evidence of witheld [sic] exculpatory evidence, Brady material, to clear or to tend to clear alleged guilt (Doc. 193, p. 2). Snowden states that the "prosecution own C.I. stated he never received any drugs from Snowden." (Doc. 193, p. 4). Snowden argues that this shows the "prosecution isn't up to date with the Brady, Giglio, Jencks, and the testimony of witnesses should be corrected, including false testimony." *Id.* at 5. He is requesting impeachment evidence, evidence of witness bias and exculpatory evidence. *Id*. It is unclear and speculative what material Snowden is requesting. Again, the Government has already indicated it is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). (Doc 197, p. 2). The Government's assurances are enough. "[M]ere speculation would convert *Brady* into a discovery device and impose an undue burden upon the district court." *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985).

Regarding Snowden's request regarding Jenck materials, Court lacks the authority to order production under the Jencks Act. *United States v. Harris*, 542 F.2d 1283, 1296 (7th Cir. 1976). As stated above, the Jencks Act only requires the Government to produce statements "made by a witness to a grand jury" after the witness "has testified on direct examination" at trial. § 3500(b). No witness has yet testified in this case. Additionally, the Government stated they have already included "early production of Jencks Act material." (Doc. 197, p. 4).

The Court therefore **DENIES** Snowden's Motion to Compel Disclosure (Doc. 193).

**I. Motion for Reconsideration re: 206 Order (Doc. 211)**

Snowden requests the Court reconsider his *pro se* Motion to Dismiss for violation of his Fourth and Fifth Amendment rights (Doc. 211). Snowden states he was not able to file his motion by the deadline because his Motion to Proceed *pro se* was pending and his court date changed to November 9, 2021. *Id*. The Court denied the Motion for Reconsideration (Doc. 211) for not being timely filed by the August 9, 2021 deadline.

The Court has "both the authority to establish deadlines and the discretion to enforce them." *Raymond v. Ameritech Corp*., 442 F.3d 600, 605 (7th Cir. 2006). Snowden will not be prejudiced by this ruling. The assertions and arguments in Defendant's Motion to Dismiss (Doc. 24) are made in Snowden's other *pro se* motions discussed here. Specifically, in Snowden's Motion to Dismiss he states his arrest is not supported by probable cause (Doc. 204, p. 1) and the prosecutors are violating their obligations under *Brady*. *Id*. at 2. These assertions have been addressed by the Court already.

Also, the Court will hear arguments on Snowden's Motion to Suppress Statements (Doc. 181) and Motion to Object to Statement of Miranda Rights (Doc. 210). The Court has afforded Snowden ample opportunity to address his concerns.

Additionally, Snowden states the Court is violating his Right to a Speedy Trial (Doc. 204, p. 4). The Speedy Trial Act of 1974, 18 U.S.C. § 3161, requires that a defendant's trial begin within 70 days of the defendant's indictment or first appearance, whichever comes later. 18 U.S.C. § 3161(c)(1). The Act provides for certain time periods to be excluded from the 70-day clock, including continuances granted to serve the ends of justice, 18 U.S.C. § 3161(h)(7)(A), delays due to a witness's unavailability, § 3161(h)(3), and time during which a pretrial motion is

pending. § 3161(h)(1)(D). After the Government issued a superseding indictment (Doc. 48) in June 2020, Snowden filed 23 *pro se* motions. Filing pretrial motions tolls the Speedy Trial Act. Snowden's speedy trial rights have not been violated.

The Court therefore **DENIES** Snowden's Motion for Reconsideration (Doc. 211).

## III. CONCLUSION

For the foregoing reasons, Snowden's Motions (1) Motion for Bond (Doc. 173); (2) Motion for Intent to Use Evidence (Doc. 175); (3) Motion to Suppress Text Messages (Doc. 176); (4) Motion to Suppress Search (Doc. 177); (5) Motion for Facial Challenge (Doc. 178); (6) Motion to Compel Discovery (Doc. 179); (7) Motion for Expert Witness (Doc. 180); (8) Motion to Compel Disclosure of Brady Materials (Doc. 193), (9) Motion for Reconsideration regarding (Doc. 165) Order Striking Motion to Dismiss (Doc. 211) are **DENIED**.

**IT IS SO ORDERED.**
**Dated: November 16, 2021**

**/s/ J. Phil Gilbert**
**J. PHIL GILBERT**
**DISTRICT JUDGE**